UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CHRISTOPHER LEHERISSIER, )<br>    Defendant. )<br>) | C.A. No. 22-cr-105-MRD |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

    Christopher Leheressier pled guilty and was sentenced to seventy-two months to serve in Bureau of Prisons ("BOP") custody for distribution and possession of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (4). ECF No. 45 at 1-2. As part of that sentence, the Court imposed 10 years of supervised release and special conditions of supervision, including treatment for any substance use disorder, mental health issues, and participation in a sex offender specific treatment facility. ECF No. 45 at 3, 5. At the time of sentencing, the Court recommended that Mr. Leherissier be placed at the Federal Medical Center ("FMC") Devens "for sex offender specific treatment." *Id.* at 2. That never happened, and he claims he has not been provided any sex offender treatment at any BOP facility. This, combined with BOP's alleged failure to provide adequate mental health and medical treatment and interrupting communication to the outside world, leads Mr. Leherissier to ask the Court to grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and to release him

from BOP custody. *See generally* ECF No. 50. After reviewing the parties' submissions and the law relevant thereto, this Court finds that Mr. Leherissier has not provided "extraordinary and compelling reasons" to warrant the reduction, § 3582(c)(1)(A)(i), and his Motion for Compassionate Release is DENIED.

I. BACKGROUND

In April 2021, Rhode Island State Police began an investigation into a subject possessing and transferring child pornography. ECF No. 52 at 3. After executing a search warrant, police seized a hard drive and cell phone, and searched two email accounts, finding 240 total images and 225 total videos. *Id.* at 4. This led to both state and federal charges. *Id.*

On November 15, 2022, Mr. Leherissier pleaded guilty in this Federal Court to possessing and distributing child pornography and was eventually sentenced to seventy-two months incarceration, followed by ten years of supervised release.[1] ECF No. 52 at 2. As part of the sentence, Mr. Leherissier agreed to specific conditions of probation, including counseling for mental health and substance use disorder as well as sex offender treatment. ECF No. 45 at 5.

While serving this sentence in BOP custody, Mr. Leherissier has been in five facilities: 1) Wyatt Detention Center (while awaiting trial), 2) Federal Correctional Institution ("FCI") Schuylkill, 3) FCI McKean, 4) United States Penitentiary ("USP") Hazelton, and 5) USP Big Sandy. ECF No. 50 at 2–4. From the beginning, Mr.

---

[1] Mr. Leherissier is scheduled to be released into the community in March 2026 and his projected release from BOP custody is September 2026. ECF No. 52-1 at 2.

Leherissier says he was "threatened by other inmates upon arrival because he is a sex offender," which caused him to fear for his safety. *Id.* at 3. He asked prison officials for protection, but they simply told him "to commit a violation in order to be placed in protective custody." *Id.* He followed this advice, but, according to Mr. Leherissier, things got worse for him. He claims the BOP failed to provide sex offender treatment, and failed to provide any meaningful treatment for mental health or substance use disorder.[2] *Id.* On top of that, he claims "the [FCI] McKean administration systematically punished [him]; most notably by reducing his access to the phone," including contact with his family and his attorney throughout 2024 and into 2025. *Id.*

Around April 2025, Mr. Leherissier was advised to file for compassionate release based on these grievances, which he filed with prison staff in early June 2025. *Id.* at 5–6. He claims that sometime in July 2025 "the warden and one of his unit managers essentially told him that his compassionate release request had been lost and that he needed to refile it." *Id.* at 6. These issues led to his counsel of record to file the instant Motion for Compassionate Release on Mr. Leherissier's behalf. *Id.* at 8.

---

[2] The sex offender treatment program is not available at any of the BOP facilities that housed Mr. Leherissier, ECF No. 50 at 4, though he was engaged in sex offender programming while detained at Wyatt, *id.* at 7 n.4.

3

## II.   LEGAL STANDARD

Compassionate release can only be pursued "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once the motion is before the court, the district judge must engage in the "multi-step inquiry" that was recently reiterated by the First Circuit in *United States v. Duluc-Méndez*, 156 F.4th 55, 60 (1st Cir. 2025). The Circuit provided a three-part inquiry: 1) "assess whether the defendant has set forth 'extraordinary and compelling reasons' that warrant a sentence reduction" and 2) "ask whether the reduction 'is consistent with the applicable policy statements issued by the Sentencing Commission.'" *Id.* (quoting 18 U.S.C. §§ 3582(c)(1)(A)(i) and (ii)). If the first two criteria are satisfied, then the court moves on to step three—considering the relevant section 3553(a) sentencing factors. *Id.* (quoting *United States v. Burgos-Montes*, 142 F.4th 48, 57 (1st Cir. 2025)). As a part of step three, the court must "determine whether, 'in its discretion' and 'under the particular circumstances of the case,' the reduction is warranted." *Id.* (quoting *Burgos-Montes*, 142 F.4th at 57). Compassionate release may be granted "only if the defendant satisfies each of these steps." *Id.*

## III.   DISCUSSION

Mr. Leherissier is asking this Court to be released from BOP custody to electronic monitoring so he can begin "meaningful treatment while on supervised

4

release." ECF No. 50 at 7. Before analyzing the three-part inquiry outlined in *Duluc-Méndez*, the Court must determine whether Mr. Leherissier exhausted all his administrative remedies before filing this motion. Section 3582(c)(1)(A). If the Court finds he did not exhaust his administrative remedies, then it need not go further.

### A.   Administrative Exhaustion

Section 3582 makes clear that a motion for compassionate release filed by a defendant may only be considered by the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Section 3582(c)(1)(A). Mr. Leherissier argues he satisfied the exhaustion requirement with "[his] attempt to petition the USP Hazelton warden," and that the exhaustion requirement should be "waived" since more than thirty days lapsed since he submitted his first petition in June 2025 and the filing of this motion in September 2025. ECF Nos. 50 at 6 n.2; 56 at 2. The Government asserts that BOP has no record of Mr. Leherissier filing the first request in June 2025, requiring him to exhaust administrative remedies, which he has not done. ECF No. 52 at 8–9.

It is clear to this Court that Mr. Leherissier did not exhaust his administrative remedies, but the more precise issue is whether he was excused from this requirement based on his representation that the warden at USP Hazelton did not respond to the June 2025 request. As the Court in *United States v. Nieves* stated, "[t]he statute clearly delineates two avenues by which a defendant may eventually

5

file a motion for compassionate release … [t]he second avenue requires the defendant to wait for thirty (30) days to lapse after the warden receives their request." 615 F. Supp. 3d 73, 76 (D.P.R. 2022). This is the avenue taken by Mr. Leherissier. While not sworn to in any declaration, Mr. Leherissier asserts he filed a request with the FCI Hazelton warden in June 2025 and that two individuals, including the warden, told him the request was lost and needed to be resubmitted. ECF No. 50 at 5–6. Thirty days elapsed between submitting the first request to prison officials in June 2025 and filing the instant motion on September 23, 2025.

The Court accepts Mr. Leherissier's assertions and finds that he was not required to exhaust administrative remedies since he filed a petition that was not responded to within thirty days. Therefore, the Court will move on to consider the merits of his motion for compassionate release.

### B.   Extraordinary and Compelling Reasons

Despite the Court's finding that Mr. Leherissier was not required to exhaust administrative remedies, his motion fails to come close to meeting the "extraordinary and compelling" reason standard that is at the center of the first step of the inquiry applied to compassionate release requests. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The reasons for the compassionate release request must fit within the plain meaning of the terms "extraordinary" and "compelling." *United States v. Canales-Ramos*, 19 F.4th 561, 566–67 (1st Cir. 2021); *see also United States v. Trenkler*, 47 F.4th 42, 49 (1st Cir. 2022). As stated in *Canales-Ramos*, "[t]he plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either

6

in fact or in degree." 19 F.4th at 566–67 (citing Webster's Third New Int'l Dictionary of the Eng. Language Unabridged 807 (1981) (defining "extraordinary" as "going beyond what is usual, regular, common, or customary")). And the "plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing." *Id.* at 567 (citing Webster's Third at 462 (defining "compelling" as "forcing, impelling, or driving circumstance" and as "tending to convince or convert by or as if by forcefulness of evidence")).

Mr. Leherissier raises the following three issues: 1) not being offered a sex offender treatment program, 2) inadequate mental health and medical treatment, and 3) interruptions in communications with the outside world—fail to qualify as either "extraordinary" or "compelling." ECF No. 50 at 3. As it relates to sex offender treatment, the Government maintains that Mr. Leherissier has twice expressed a lack of interest in sex offender treatment offered by BOP. ECF No. 52 at 9. To support this assertion, the Government points to notes on two dates—October 13, 2023 and May 2, 2024—stating Mr. Leherissier's lack of interest in engaging in sex offender treatment. ECF No. 52. As the Government points out, "[p]articipation in the BOP's sex offender treatment program is voluntary—the BOP is not going to place an inmate in a program unless he wants to be there." ECF No. 52 at 9. The prior offer alone is enough to reject the requested relief based on a claim of not being provided sex offender treatment, but, on top of this, the Court notes that nothing requires BOP to offer sex offender treatment. The requirement that Mr. Leherissier engage in a sex offender treatment program is a "special condition[] of *supervision*"

(upon release from custody) and it specifically says, "[t]he defendant shall participate in a sex offender treatment program as *directed by the probation officer*." ECF No. 45 at 5 (emphasis added). The Court does not read this condition to impose an obligation on BOP to provide sex offender treatment within the institution of incarceration.

Next, Mr. Leherissier argues he is entitled to compassionate release based on BOP's "inconsistent and often not very effective" mental health treatment. ECF No. 56 at 3. The Court recognizes that the prison setting may not be the ideal place to seek out mental health treatment, but, here, it is undisputed that Mr. Leherissier was receiving monthly treatment. ECF No. 52 at 10. The notes from those mental health treatment sessions also fail to indicate that the treatment provided was lacking in any way, and Mr. Leherissier has not highlighted any treatment areas that were lacking. *Id*. Just days before this motion was filed, Mr. Leherissier "reported no issues with sleep or sleep attainment … and denied any current mental health concerns" during a mental health evaluation. *Id*. at 11. Even though "the mental health care in the BOP has been less than ideal," that is not the standard needed to grant compassionate release. ECF No. 56 at 4. Nothing about Mr. Leherissier's mental health treatment rises to the level of an "extraordinary" or "compelling" reason to grant relief.

Last, Mr. Leherissier claims the BOP is interfering with his communication with the "outside world" and that this forms the basis to grant compassionate release. He is wrong. The Government has provided documentation substantiating the reason

8

he lost phone privileges from September 24, 2024 through September 23, 2025: he refused, or was unable, to provide a drug test. ECF No. 52 at 13. All of the complaints with respect to communication with the outside fall within this time period. ECF No. 50 at 5–6. The Government also notes that Mr. Leherissier had consistent contact with his parents, who are on his call list, prior to his phone privileges being rescinded. ECF No. 52 at 13.

While none of the reasons Mr. Leherissier puts forward for the Court's consideration is "extraordinary and compelling," the First Circuit has explained that "district courts have the discretion to review prisoner-initiated motions by taking the holistic, any-complex-of-circumstances approach." *Trenkler*, 47 F.4th at 49. The Court does not reach a different conclusion when reviewing Mr. Leherissier's situation from a "holistic" point of view. While it would encourage BOP to, once again, offer Mr. Leherissier access to a sex offender treatment program, consistent mental health treatment, and communication to his Counsel and family, the Court declines to exercise its discretion to grant compassionate release on the bases presented in Mr. Leherissier's motion.[3]

## IV. CONCLUSION

Based on the above, the Court finds that Mr. Leherissier has failed to put forth "extraordinary and compelling" reasons for this Court to grant compassionate release. His quest to have his custodial sentence shortened fails on the first part of

---

[3] For what it is worth, the Court reiterates Judge Smith's recommendation "[t]hat the defendant be placed at FMC Devens for sex offender specific treatment." ECF No. 45 at 2.

9

the "multi-step inquiry," and because of that, the Court need not analyze either the policy statements issued by the Sentencing Commission or the relevant section 3553(a) sentencing factors. For all these reasons, Mr. Leherissier's Motion for Compassionate Release is DENIED.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

11/25/2025